IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

```
┌─────────────────────────────────┐
│              FILED              │
│     CLERK, U.S. DISTRICT COURT   │
│          8/12/2020              │
│  CENTRAL DISTRICT OF CALIFORNIA  │
│  BY:      SE        DEPUTY       │
└─────────────────────────────────┘
```

UNITED STATES OF AMERICA,

Plaintiff-Respondent,

Civil No. 19-cv-10116-ODW
Criminal No. 18-cr-00038-ODW-1

v.

KENNETH COLLINS,

Defendant-Movant.

_____/

**DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION TO HIS
MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE
PURSUANT TO 28 U.S.C. SECTION 2255**

COMES NOW, the Defendant-Movant, Kenneth Collins, proceeding *pro se*, respectfully submits this reply to the Government's response (Doc.#s 14 & 15) to his § 2255 motion and memorandum of law in support thereof. (Doc.#s 1 & 2).

## I.  INTRODUCTION

The Government, in its response to Mr. Collins' motion under 28 U.S.C. § 2255, argues, without providing any supporting factual content or evidence, that, *inter alia*, the claims raised by Mr. Collins are not cognizable under § 2255. (*See* Gov. Resp. at 6).

Under 28 U.S.C. § 2255, a prisoner may move the convicting court to vacate, set aside, or correct his conviction or sentence. The statute provides four grounds: "(1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the

court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is 'otherwise subject to collateral attack.'" *See* 28 U.S.C. § 2255(a); *see also* United States v. Hill, 915 F.3d 669, 674 (9th Cir. 2019).

Based on the following discussion of law and facts, Mr. Collins respectfully requests that the court reject the Government's request in its entirety that his § 2255 motion be denied and instead enter a judgment in his favor, or in the alternative, convene an evidentiary hearing to determine the veracity and reliability of the factual content upon which the claims raised in his habeas petition rests because, after carefully examining the content of the Government's response brief, there is no denying that this habeas matter raises issues of disputed facts that cannot be resolved on the record that is currently before the court. And as the court is well aware, disputed facts in habeas proceedings that cannot be resolved on the existing record require that the court convene an evidentiary hearing in order to properly resolve those facts. *See e.g.,* Aron v. United States, 291 F.3d 708, 714 (11th Cir. 2002) ("Unless the motion and the files and records of the case *conclusively* show that the prisoner is entitled to no relief, the court *shall* cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."), *quoting* 28 U.S.C. § 2255 (emphasis in original); United States v. Yizar, 956 F.2d 230, 234 (11th Cir. 1992) (district court must hold an evidentiary hearing where court cannot state conclusively that the facts alleged by petitioner, taken as true, would present no ground for relief; United States v. Ross, 584 Fed. Appx. 502, 503 (9th Cir. 2014) (finding that "district court did not abuse its discretion by not conducting an

evidentiary hearing" because "[t]here [were] no disputed facts."); Reshard v. United States, 1992 U.S. App. LEXIS 16245, *7 (9th Cir. 1992) (finding that "[n]o [evidentiary] hearing is required when [] all the petitioner's claims are based on facts in the record before the court."). As the Eleventh Circuit made clear in Aron, supra, "[t]he law is clear that, in order to be entitled to an evidentiary hearing, a petitioner need only *allege*—not prove—reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *Quoting* Aron v. United States, 291 F.3d at 715 n.6 (emphasis in original).

Furthermore, because the crux of the Government's argument rests primarily on the bald declarations made by Mr. Collins' former attorneys (*See* Gov. Resp. at 12 n.2, 14, 15 n.3), both of whom essentially contends that the claims made against them by Mr. Collins are false, and because, as a matter of law, the attorneys are merely denying incidents that took place between them and Mr. Collins without providing any substantive corroborating evidence to rebuff Mr. Collins' claims or validate their own declarations, the attorneys' word alone is an insufficient and insubstantial basis upon which to conclude that the claims put forth by Mr. Collins are either false or unmeritorious. Cf. United States v. Caruso, 684 F. Supp. 84, 87 (S.D.N.Y. 1988) (defendant's attorney's affidavit insufficient to raise factual dispute). Therefore, an evidentiary hearing is absolutely necessary to ascertain where the truth lies. Cf. United States v. Rodriguez, 347 F.3d 818, 823 (9th Cir. 2003) ("A district court must grant a federal habeas petitioner's motion for an evidentiary hearing 'unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'"). Indeed, in order to ensure that Mr. Collins is afforded a fair process, more is needed.

Surely, if an attorney's word alone is all that it takes to determine whether a habeas

petitioner is entitled to no relief, then the purpose and goal of the habeas process and its constant evolution through judicial findings and caselaw will be deemed meaningless because, after all, the outcome of the petitioner's ineffectiveness claim against a former attorney would *not* turn on the arguments and evidence presented by the petitioner but rather on the attorney's sworn declaration of what *he* said transpired between him and the petitioner without any regard whatsoever for the claims and arguments made by the petitioner or the facts and circumstances of the petitioner's underlying criminal case. In other words, there would be no need to vet the record or think critically about the arguments made by the petitioner because whatever assertion made by the attorney would settle the matter.

In the case here, a careful reading of the Government's response demonstrates that that is precisely the perception the Government is attempting to convey. Indeed, the manner in which the Government's response is written clearly shows that its entire argument challenging Mr. Collins' claims is predicated on the following premise: that the sworn declarations made by Mr. Collins' former attorneys squarely trumps the claims raised by Mr. Collins in his § 2255 motion. In other words, what the Government is arguing is that regardless of the arguments put forth by Mr. Collins and the circumstantial evidence presented in support of those arguments, (*see e.g.*, Movant's § 2255 Memorandum of Law at 4 & n.3 and n.5), the sworn declaration of his former attorneys effectively defeat those arguments and circumstantial evidence presented in support thereof. But if such an arbitrary process actually signifies how the system operates, then Supreme Court precedents like Strickland v. Washington and the standard of review that Strickland espouse would be meaningless when evaluating whether a defendant is entitled

4

to relief based on his claim that his attorney was ineffective in representing him because there would be no need to *evaluate* anything; the attorney's "sworn declaration" would have already settled the matter. Cf. Beck v. Codilis & Stawiarski, P.A., 2000 U.S. Dist. LEXIS 22440, *17 (N.D. Fla., Dec. 26, 2000) (law firm violated § 1692e when it submitted false affidavits regarding fees to court); Burns v. Burns, 269 A.D. 1038, 58 N.Y.S.2d 609 (Supreme Ct. N.Y., 1945) (holding that "a false statement submitted by the attorney in a habeas corpus proceeding was properly subjected to scrutiny in determining whether the attorney was in contempt"); Seitzinger v. Reading Hosp. & Medical Center, 165 F.3d 236, 242 (3rd Cir. 1999) (attorney's false statement to client that he had filed the complaint, coupled with plaintiff's extreme diligence in pursuing claim, justified equitable tolling); Woods v. Cain, 2013 U.S. Dist. LEXIS 188605, at *25 (E.D. Louisiana, March 28, 2013) (finding that district attorney lied about evidence presented in the case); Mosher v. LaValle, 491 F.2d 1346, 1348 (2nd Cir. 1974) (holding that an attorney's "false statement" that the judge had promised to impose the minimum sentence demonstrated "that the circumstances as they existed at the time of the guilty plea, judged by objective standards …, reasonably justified his mistaken impression …"); United States v. McMullen, 98 F.3d 1155, 1159 (9th Cir. 1996) ("Although section 2255 imposes a fairly lenient burden on the petitioner, the petitioner is nonetheless 'required to allege specific facts which, if true, would entitle him to relief.'").  Stated differently, given the enormous weight that the Government has placed on the declarations made by Mr. Collins' former attorneys, what reason would the court have to delve into the record when the attorneys have already described what occurred?  This is the level of deference that the Government is advocating which the law clearly does not support and which certainly

isn't given to Mr. Collins who is already operating at a disadvantage in fighting to restore and protect his legal rights. As a convicted felon, he understands that his word will always be subordinate to that of his attorneys. So his only saving grace in a situation like this is the record that exists and the underlying circumstances of his case simply because neither of those features can be changed; the facts either exist or they don't.

In sum, contrary to the Government's proposition that the bald declarations made by Mr. Collins' former attorneys categorically refutes Mr. Collins' claims regarding his interaction with his attorneys, there is absolutely nothing fair or just about unilaterally accepting the word of counsel over the detailed factual content presented by Mr. Collins in support of his claims simply because the attorneys' word was made under oath, and especially in considering that the underlying circumstance of this case tells an entirely different tale. More is needed. And contrary to the Government's contention, it simply did not provide enough factual content to demonstrate that Mr. Collins is not entitled to relief on his claim of ineffective assistance of counsel.

Again, while counsel's interest in this proceeding is ostensibly to protect their image and reputation from being sullied by an ineffectiveness judgment, that interest should not be at the expense of Mr. Collins' constitutional right to meaningful and effective legal representation.

## II. **DEFENDANT'S REPLY TO THE GOVERNMENT'S RESPONSE**

### A. **Preliminary Statement**

As an initial matter, it is unclear what relevance the content of the Government's introductory statement has on the merits of the claims raised by Mr. Collins in his § 2255

motion other than to communicate to the court that Mr. Collins is a despicable malefactor who is deserving of the punishment that was handed down upon him and that the claims brought before this court by him should be summarily disregarded on the basis of his despicableness regardless of whether his claims have any merit.  In other words, why would the Government devote five paragraphs of its response motion to describing Mr. Collins as "a corrupt deputy sheriff [who was] motivated by greed[] [and] utterly indifferent to his sworn duty to uphold the law" (Gov. Resp. at 1-2) when the Government had already made those remarks about Mr. Collins during the pre-trial phase of his criminal case? The logical response to that question is that the Government wants the court to focus its attention on the notion that Mr. Collins is a vile and despicable person who is deserving of the punishment that he received in hopes that doing so would lead to the court paying *less* attention to the underlying circumstances driving the claims raised by Mr. Collins in his § 2255 motion.  In the Government's view, if the court were to scrutinize Mr. Collins through a negative lens, then any assertion that he makes that ultimately becomes part of the court's credibility assessment would categorically be looked upon as false.

Without question, aspects of Mr. Collins' conduct while he was a "deputy sheriff" that, in the Government's view, characterize him as a "corrupt" individual who was "utterly indifferent to his sworn duty [as a police officer] to uphold the law" have nothing to do with the fact that Mr. Collins' attorneys provided him with substandard legal representation.  Instead, the only issues that matter here are, (1) whether Mr. Collins sufficiently established that his attorneys' performance was deficient under the standard set forth by the Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984);  (2)

whether Mr. Collins was prejudice by his attorneys' deficient performance; and (3) whether Mr. Collins is entitled to the relief that he seeks.

Because the Government's opinion about Mr. Collins does not carry the force of law, the focus here, as stated, should be on whether his claims are meritorious and whether, as a matter of law, he is entitled to the relief. The court is already aware of the circumstances of Mr. Collins' underlying criminal case because, as mentioned, the Government made a point of describing him in the same negative light that is depicted in its response motion. Therefore, there was no need for the Government to again venture down the "character assassination" path that it selected in responding to Mr. Collins' § 2255 motion except to do so in hopes of persuading the court to regard Mr. Collins as a defendant who is deserving of his 210 months prison sentence *regardless* of whether or not his attorneys violated his Sixth Amendment right to effective legal representation or whether there is any factual basis in the record to support his conviction under 21 U.S.C. § 846 which is among the key issues put forth by Mr. Collins in his § 2255 motion. Cf. United States v. Linick, 195 F.3d 538, 541 (9th Cir. 1999) (upholding a law allowing imposition of "terms and conditions as the authorized officer deems necessary to … otherwise protect the public interest"); Baskin v. Brown, 174 F.2d 391, 394 (4th Cir. 1949) (finding that "[a] judge cannot be disqualified merely because he believes in upholding the law, even though he says so with vehemence.").

That said, the issue driving this case is straightforward: whether or not Mr. Collins' claims have any merit. Regurgitating personal views about Mr. Collins' standing as a police officer is irrelevant to that discussion simply because if Mr. Collins succeeds in establishing that his attorneys violated his Sixth Amendment right to effective legal

8

representation, then the law requires that he be afforded the relief that he seeks, regardless of how the Government may feel about him personally.

Finally, in consideration of the seriousness of the claims driving this habeas matter, it is important to reiterate that Mr. Collins is litigating this matter *pro se*. The reason for that is because it is well-known knowledge that *pro se* litigants are typically at a disadvantage in their efforts to litigate their claim(s) before a court of law. Often, many are hampered by, (a) their lack of experience in the art of litigating, (b) their limited understanding of the complexity of the rule of law, (c) their substandard educational background and, of course, (d) their inability to properly access the tools and case-specific information needed to effectively support their claims. To further compound the disadvantages that *pro se* litigants face, they are also confronted with the ever increasing challenge of going up against experienced and knowledgeable litigators who have access to myriad technical resources at their disposal in presenting opposing arguments which, when juxtaposed with the *pro se* litigant's limited resource and diminished access to case-specific information that forms the basis of their claims, further undermines the *pro se* litigant's ability to properly defend against opposing arguments or adequately contests whether references to particular documents in the record by the opposition are accurately made. As a result, many end up losing valid legal claims simply because they are unable to properly and adequately ascertain whether supporting documents relied upon by the opposing party are in fact what those documents purport to be, and also because the Government has the advantage of dictating how the case is presented before the court. (*See e.g.*, Doc.# 12).

That is the scenario that exists here. As stated, the Government repeatedly stated in

its response motion that the record of Mr. Collins' underlying criminal case squarely contradict the clams raised in his § 2255 motion, and that Mr. Collins "has offered no proof, let alone anything to contradict his counsel's sworn statements" (*See* Gov. Resp. at 15) as if to say that Mr. Collins' former attorneys' "*statements*" are absolute and incontrovertible evidence that conclusively settles the dispute being waged here. Again, the Government has not pointed to *where* in the record the contradiction that it speaks of exists. Furthermore, neither of Mr. Collins' former attorneys have provided any evidence to substantiate their claims and statements. Their only argument is that their statements are true. In order for this proceeding to be deemed fair and transparent, more is needed.

For that reason, Mr. Collins respectfully requests, based on the discussion that follows, that should the court determine that the claims raised in his § 2255 motion cannot be decided based on the record that is currently before the court, that the court appoint counsel to assist him with navigating through the final stages of this habeas proceeding. (Cf. Rule 8(c) of the Rules Governing § 2255 Proceedings). Mr. Collins avers that such a request is both fair and reasonable because it is tied inextricably to the remedy that needs to occur in this case to ensure a fair and just outcome.

**B. The Government's Attack Against the Merits of Mr. Collins' Claims**

As mentioned above, the Government argued that Mr. Collins failed to raise "articulable cognizable claims" in his § 2255 motion but it did not explain *why* any of the claims raised by Mr. Collins is not cognizable within the framework of a § 2255 proceeding. (Gov. Resp. at 6). Therefore, there is no way for Mr. Collins to formulate a proper response to this particular argument without having to speculate about what the Government is arguing. For that reason, this argument put forth by the Government should be summarily rejected.

Similarly, inasmuch as the Government is arguing that Mr. Collins' signing of the Government's plea agreement was done "voluntarily" (Gov. Resp. at 4) and that such voluntariness precludes him from challenging the outcome of the plea agreement, such an argument is foreclosed by the Ninth Circuit's holding in United States v. Pruitt, 32 F.3d 431 (9th Cir. 2001) where the Court explained that it "doubt[s] that a plea agreement could waive a claim of ineffective assistance of counsel based on counsel's erroneously unprofessional inducement of the defendant to plead guilty or accept a particular plea bargain." Id; *see also* United States v. Abarca, 985 F.2d 1012 (9th Cir. 1993) (explaining that "we do not hold that Abarca's waiver categorically forecloses him from bringing any section 2255 proceeding"). Both of these cases were raised by Mr. Collins in his § 2255 motion in support of his argument against the Government's anticipated reliance on the plea agreement that he signed. Yet nowhere in the Government's brief did it argue (or even suggests) that Mr. Collins' reliance on Pruitt and Abarca is misplaced; nor did the Government bothered to present any counterargument demonstrating that the terms and

11

content of the plea agreement signed by Mr. Collins *supersedes* his claim of ineffective assistance of counsel.

Because more is needed in order to convince the court that Mr. Collins is not entitled to the relief that he seeks, the Government cannot rely on a plea agreement signed by Mr. Collins that is the product of his attorneys' ineffectiveness as basis to argue against the very violation that Mr. Collins is complaining about. *See* United States v. Cockerham, 237 F.3d 1179 (10th Cir. 2001) (holding that "a plea agreement waiver of postconviction rights does not waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging the validity of the plea or the waiver."); DeRoo v. United States, 223 F.3d 919, 924 (8th Cir. 2000) ("A defendant's plea agreement waiver of the right to seek section 2255 post-conviction relief does not waive defendant's right to argue, pursuant to that section, that the decision to enter into a plea was not knowing and voluntary because it was the result of ineffective assistance of counsel.").

## C. The Government is Incorrect in Stating that Mr. Collins Did Not Demonstrate Deficient Performance & Prejudice Regarding a Cooperation Plea (CLAIM ONE)

It is respectfully stated that the Government's argument that Mr. Collins' "primary claim that his attorney should have pursued a cooperation plea agreement with the government in no way satisfies Strickland" makes absolutely no sense. (*See* Gov. Resp. at 10). The law is well settled that an attorney who fails to communicate to the government his client's wish to cooperate renders ineffective assistance of counsel. *See e.g.*, United States v. Ortiz, 1990 U.S. Dist. LEXIS 758, *6 (N.D. Ill., Jan. 18, 1990) ("We believe

that Frazen's alleged failure to communicate Ortiz's offers of government cooperation, thereby depriving Ortiz of the opportunity to obtain a recommendation for a reduced sentence, falls outside the wide range of competent assistance.").

The Government contends that Mr. Collins "offer[ed] no evidence that he ever wanted [*sic*], or communicated to his attorneys that he sought to enter into[] a cooperation plea agreement." (Gov. Resp. at 10). In support of this contention, the Government alluded to Mr. Collins' former attorneys' declarations, made under oath and "signed under penalty of perjury," that "[Mr. Collins] never told them that he wanted to enter into a cooperation plea agreement, nor did they have any reason to believe that [Mr. Collins] would have wanted to cooperate." Id.

To begin with, as a matter of law, Mr. Collins is not required to *prove* at this initial stage of the proceedings that he wanted to enter into a cooperation agreement with the Government and that he asked his attorney to explore the possibility of obtaining a cooperation agreement. *See e.g.*, Aron v. United States, 291 F.3d at 715 n.6 ("[t]he law is clear that, in order to be entitled to an evidentiary hearing, a petitioner need only *allege*— not prove—reasonably specific, non-conclusory facts that, if true, would entitle him to relief.") (emphasis in original). Secondly, the Government's spurious contentions, as they relate to this particular claim, are squarely belied by the record and further illuminate why bald statements (even those made under oath) made by attorneys hoping to avert an ineffectiveness judgment are an insufficient and unreliable basis upon which to adjudge a petitioner's credible ineffectiveness claim.

Without rehashing issues that have already been argued in Mr. Collins' memorandum of law in support of his § 2255 motion, in that document Mr. Collins

13

outlined a litany of instances giving credence to his desire and willingness to enter into a cooperation agreement with the Government.  He also outlined the wealth of information that he possessed that would have enabled him to substantially reduce his criminal liability under the rubric of a properly structured cooperation agreement that any competent attorney could have devised. (*See* Movant's Memo at 5-8).  For example, there is evidence of Mr. Collins talking in detail about the existence of other corrupt law enforcement officials who he worked with, "enough so that the Government relied on the averments not only to show the seriousness of weeding out corrupt cops, but to also convey the seriousness of [Mr. Collins'] conduct." (*quoting* Movant's Memo at 6). Similarly, in its sentencing memorandum, (*See* Doc.# 113), the Government argued that "[a]lthough co-defendants Easter and Valencia were not ... law enforcement officers, *that does not mean that [Mr. Collins] did not employ other team members who potentially were law enforcement officers*." Id. at n.2 (emphasis added). Equipped with this information, any reasonable attorney seeking to provide his client with effective legal representation would have seized upon the opportunity to explore the possibility of entering into a cooperation agreement with the Government *even if*, as the attorneys now contend, Mr. Collins did not express to them his desire to cooperate, which Mr. Collins actually have. Cf. United States v. Allen, 831 F.2d 1487 (9th Cir. 1987) (finding, in part, "that defendant's attorneys repeatedly suggested to defendant that he cooperate with the prosecution and reduce his liability, and that defendant adamantly refused to do so."). Yet that never happened in Mr. Collins' case notwithstanding the fact that cooperation was the ideal solution to the dilemma that Mr. Collins faced—indeed, so much so that, as stated, even the court, during Mr. Collins' change of plea hearing, "inquired why wasn't a

cooperation agreement sought in Mr. Collins' case." (*quoting* Movant's § 2255 Motion at 6). In response to the court's inquiry, the attorney for the Government stated that Mr. Collins' attorney *never* contacted her about Mr. Collins wanting to cooperate.

With those remarks in mind, if counsel were not on notice before as to whether Mr. Collins was interested in cooperating as counsel now contend in their declarations, the discussion with the court that occurred during the change of plea hearing regarding a cooperation agreement between Mr. Collins and the Government certainly paints an entirely different portrait—one that wholly eviscerates the attorneys' "sworn" declaration. In fact, based on the discussion that occurred during the change of plea hearing alone, it is unquestionably disingenuous for the Government and Mr. Collins' former attorneys to contend, particularly under oath, that they did not "have any reason to believe that [Mr. Collins] would have wanted to cooperate." (Gov. Resp. at 10).

As to the Government's contention that Mr. Collins attorneys' decision not to pursue a cooperation agreement was a "strategic" move, (Gov. Resp. at 11), this contention also has no merit. Even though there is sufficient information in the record to demonstrate that Mr. Collins' attorneys' decision not to pursue a cooperation agreement was ***not*** a "strategic" move, it is well settled that "[a] reviewing court 'on a cold record should not second-guess [counsel's] decisions *unless* there is no strategic or tactical justification for the course taken." Hernandez v. Senkowski, 1999 U.S. Dist. LEXIS 21141, *73 (E.D.N.Y., Dec. 29, 1999), *quoting* United States v. Luciano, 158 F.3d 655, 659 (2nd Cir. 1998) (emphasis added). That is the situation here; "there is no strategic or tactical justification for the course taken" by Mr. Collins' former attorneys. Hernandez v. Senkowski, *supra*.

Here, the Government's justification for its "strategic" argument is that "[b]y [Mr. Collins] not cooperating[] and therefore *not admitting* the full extent of his criminal enterprise, counsel was able to argue that [his] conduct was aberrant and merely the result of a 'lapse in judgment.'" (Gov. Resp. at 11) (emphasis added).  The problem with that argument is that by Mr. Collins (or any other defendant for that matter) "*not admitting* the full extent of his criminal enterprise," doing so would undermine the requirements of acceptance of responsibility within the context of pleading guilty and further expose the defendant to an enhanced sentence if the probation department were to discover that the defendant was not entirely truthful and make that argument at sentencing, ultimately to the defendant's detriment because the sentencing court would then likely be persuaded to impose a higher sentence than what the defendant would have otherwise received had he been truthful and forthcoming. Cf. USSG § 3E1.1.  Pursuing a cooperation agreement, on the other hand, avoids such a quandary.  It opens the door to a number of different ways in which the defendant could potentially receive a substantially reduced prison sentence, especially if the defendant has a defense team that is motivated to negotiate effectively on his behalf.  A classic example of this involves the case of the former Italian crime-boss, John Gotti, and his underling, Sammy The Bull. *See* United States v. Gotti, 2002 U.S. Dist. LEXIS 25177 (E.D.N.Y., June 10, 2002).  Sammy The Bull admitted to personally carrying out more than eighteen murders at the direction of John Gotti.  But because he cooperated against John Gotti, rather than being sentenced to double life, he ultimately received a prison sentence of five years *because* he cooperated.

The point here is that, given the content and context surrounding Mr. Collins' criminal case, it defies logic for the Government to argue that his attorneys' decision not

16

to pursue a cooperation agreement was in fact a strategic maneuver to achieve the best possible outcome for their client. Cf. Nevarez-Diaz v. United States, 870 F.2d 417, 422-23 (7th Cir. 1989) (explaining that "it may [] be the case that Ortiz did not really understand specifically how his offers of cooperation would have figured in the sentencing hearing."). The record shows that that is simply not the case.

In short, Mr. Collins received ineffective assistance of counsel, and he was prejudiced by his attorneys' deficient performance. And the Government certainly has not provided any information to prove otherwise. For that reason, Mr. Collins is entitled to relief.

**D.   The Government's Attack Against Mr. Collins' Drug Quantity Claim**

In support of its attack against Mr. Collins' "drug quantity" claim, the Government again points to the plea agreement signed by Mr. Collins—the very document that is the product of his attorneys' deficient performance. (Gov. Resp. at 12-13).

Additionally, the Government also relied on the statutory requirement of 21 U.S.C. § 846 in support of its argument that even though "some of the methamphetamine provided by the undercover agents was fake during one of the transports," that "in no way undermines [Mr. Collins'] *agreement* to distribute certain quantities of drugs." (Gov. Resp. at 13). Relying on § 846, the Government argued that "[a] criminal conspiracy under [that statute] does not require a party to actually distribute real drugs, let alone a certain quantity; it just demands that a defendant agree to distribute *controlled substance*." Id. (emphasis added). Assessing that argument through a logical lens, since the Government concedes that the methamphetamine attributed to Mr. Collins "was

17

fake," then there is no basis in law (or fact) to sustain his conviction under § 846 based on "fake" drugs when, according to the Government, the statute specifically require that "a defendant agree to distribute *controlled substance*." (Gov. Resp. at 13) (emphasis added).

Under the Controlled Substances Act, 21 U.S.C. § 801 et seq., Congress specifically outlined what compound qualifies as a "controlled substance." Similarly, under 21 U.S.C. § 802, the term "controlled substance" is defined as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of [21 U.S.C. § 812]." Id. The description goes on to read that "[t]he term does not include distilled spirits, wine, malt beverages, or tobacco." Id. The point here is that there is no mention anywhere of "fake drugs."

As Mr. Collins argued in his Memorandum of law in support of his § 2255 motion, "in order to sustain [his] conviction under 21 U.S.C. § 841(a)(1), 'the government was required to prove, as an essential element of the crime, that [he] '*distributed*' cocaine and methamphetamine.'" (Movant's Memorandum at 16), *quoting* United States v. Santistevan, 39 F.3d 250, n.9 (10th Cir. 1994). Mr. Collins also argued that "because the cocaine and methamphetamine that are the basis of [his] conviction are in fact fake, the elements of 21 U.S.C. § 841(b)(1)(A)(viii) do not apply because there are no actual 'methamphetamine, its salts, isomers, and salts of its isomers or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers' to meet the requirement of § 841 (b)(1)(A)(viii).'" (Movant's Memorandum at n.16). These crucial points underlying Mr. Collins' argument were not addressed nowhere in the Government's response brief which clearly demonstrates that the Government has waived its right to contest this claim, and Mr.

18

Collins therefore is entitled to relief as a matter of law. *See* Pablo v. Barr, 798 Fed. Appx. 1017, 1018 (9th Cir. 2020) (finding that "the government waived this argument by failing to raise it in its answering brief."), *citing* United States v. McEnry, 659 F.3d 893, 902 (9th Cir. 2011) (treating an argument that the government failed to raise in its answering brief as waived).

### E.  **The Government's Attack Against Mr. Collins' Appeal Claim**

It is unclear what the Government meant by stating that "[Mr. Collins'] claim that he [] instructed counsel to file an appeal is belied by the record *which has now been thoroughly developed through discovery*." (Gov. Resp. at 14) (emphasis added).  It appears that the Government is again pointing at counsel's declarations as having a resolute effect—in this case, to "thoroughly develop" the record.  There is no precedent, and the Government has pointed to none, that holds (or even suggests) that the sworn declaration of an attorney is sufficient to discount credible and irrefutable information that exists in the record.  At best, counsel's declarations amount to disputed facts which require that the court convene an evidentiary hearing to properly resolve.

Also, inasmuch as the Government is contending that Mr. Collins waived his appellate rights based on his signing of the plea agreement, as discussed above, the plea agreement is the product of his attorneys' deficient performance and is therefore not binding.

Finally, the Government's contention that Mr. Collins "has offered no proof, let alone anything to contradict his counsel's sworn statements, that he ever 'expressly requested' that they file an appeal," (Gov. Resp. at 15), the point of Mr. Collins focusing

on the Government's heavy reliance on his attorneys' declaration in the preceding section of this brief is for that very reason: the Government's misguided view that the attorneys' declaration conclusively settle the matter and, according to the Government, there is no need for the court to look elsewhere.  As discussed above, neither attorneys have offered any proof to substantiate their claim.  Instead, what is being relied upon here to establish to requisite veracity in their declarations is the fact that Mr. Collins is a convicted felon and they, themselves, are attorneys.  And because of that, their word will always supersede whatever claims Mr. Collins make, regardless of any plausibility and/or demonstrable factual content that exists. But as discussed above, attorneys are not always truthful, even those who submit documents that have been sworn under oath.

In sum, it is the Government and Mr. Collins' former attorneys who have "offer[ed] nothing more than standard legal boilerplate[] replete with bald assertions" of Mr. Collins' disentitlement to relief, none of which meaningfully address the carefully outlined arguments made by Mr. Collins in his Memorandum of Law in support of his § 2255.  As Mr. Collins argued in his memorandum, after his sentencing he "communicated to his attorney that he wished to file an appeal," (Memorandum of Law at 20), and in response, "counsel expressed that he would file an appeal." Id.  Mr. Collins further argued that even if counsel believed that an appeal would have been frivolous, which clearly could not have been the case given the nature and circumstance of this case, then the proper course of action was for counsel to file a brief in compliance with Supreme Court's holding in Anders v. California, 386 U.S. 738 (1967).  Yet that never happened.

Finally, Mr. Collins argued that under Supreme Court law, "[he] is not required to demonstrate that the appeal he wished to file 'would likely have had merit' in order to

20

establish prejudice." (Memorandum of Law at 20), *citing* Peguero v. United States, 526 U.S. 23, 28 (1999) (explaining that "'[w]hen counsel fails to file a requested appeal, a defendant is entitled to a new appeal *without showing* that his appeal would likely have had merit.'") (emphasis added). This Particular aspect of Mr. Collins' claim was not addressed by the Government.

**F.   The Government Failed to Address Mr. Collins' Sentencing Disparity Claim**

Mr. Collins argued in his Memorandum of Law in support of his § 2255 motion that his attorneys were ineffective for failing to raise the issue of disparity in sentencing between himself and his co-defendants during his sentencing. (*See* Movant's Memorandum at 21). Like many of Mr. Collins' other claims, the also did not address this claim in its response brief. Therefore, as discussed above, the Government has knowingly waived its right to contest this claim. And the court should treat the Government's waiver as a concession and, accordingly, enter a ruling in Mr. Collins' favor.

**G.  Mr. Collins' Sentence Was Imposed in Violation of the Constitution**

In responding to this claim, the Government's argument is that "[Mr. Collins] offers nothing more than standard legal boilerplate, replete with bald assertions of constitutional violations, that in no way articulate a cognizable claim." (Gov. Resp. at 17).

The basis of Mr. Collins' argument, with respect to this claim, is that "the factual content outlined in the plea agreement does not establish, as a matter of law, that he participated in a conspiracy to possess with intent to distribute cocaine and methamphetamine, and … that a conspiracy does not exist because he 'cannot be

convicted for conspiring with a government agent.'" (Movant's Memorandum at 24), *citing* <u>United States v. Lewis</u>, 53 F.3d 29, 33 (4th Cir. 1995).

The argument that Mr. Collins put forth that he "cannot be convicted for conspiring with a government agent" is made throughout his Memorandum of Law in support of his § 2255. (*See* Movant's Memorandum at n.10, n.17, & pg.15-19). Yet the Government argued, incorrectly, that "[Mr. Collins] offers nothing more than standard legal boilerplate, replete with bald assertions of constitutional violations, that in no way articulate a cognizable claim." (Gov. Resp. at 17). The record clearly refutes this contention.

Therefore, because there is no need for Mr. Collins to relitigate this claim, and because the Government, itself, has offered nothing but conclusory pronouncements as its counterargument against this claim, the court should find that the Government has failed in its efforts and, accordingly, enter a judgment in Mr. Collins' favor.

## H.  <u>The Government Has Not Shown That an Evidentiary Hearing is Unwarranted</u>

The Government contends that "[n]o evidentiary hearing is required on [Mr. Collins'] claims" because the court "can make a conclusive decision as to [Mr. Collins'] credibility based on the evidence already in the record." (Gov. Resp. at 17).

To begin with, as demonstrated above, the record that the Government alludes to favors Mr. Collins. Secondly, what the Government is clearly implying is that there is no credibility issue as it relates to the declarations submitted by Mr. Collins' attorneys. Again, the discussion above demonstrate that that is not the case. And third, because the Government has not shown that "the motions and the files and records of th[is] case

conclusively show that [Mr. Collins] is entitled to no relief," an evidentiary hearing is warranted. *Quoting* <u>United States v. Blaylock</u>, 20 F.3d 1458 (9th Cir. 1994).

## III. <u>CONCLUSION</u>

WHEREFORE, for the all the foregoing reasons, Mr. Collins respectfully requests that the court reject the Government's contention in its entirety, and in doing so, enter a judgment in his favor, finding that he is entitled to relief and finding that the Government has waived its right to oppose his sentencing disparity claim, his sentence being imposed in violation of the Constitution claim, and his claim stating that his conviction based on 21 U.S.C. §§ 846 and 841(a)(1) is invalid.

Alternatively, Mr. Collins respectfully requests that the court grant him an evidentiary hearing in light of the disputed facts raised in this habeas matter.

Mr. Collins further requests that the court grant him any other relief to which he may be entitled under the law or on an equitable basis.

I, KENNETH COLLINS, HEREBY STATE AND ATTEST THAT THE ABOVE STATEMENTS AND THE STATEMENTS MADE IN MY MOTION UNDER 28 U.S.C. § 2255 AND MEMORANDUM OF LAW IN SUPPORT THEREOF ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND RECOLLECTION AND ARE MADE UNDER PENALTY OF PERJURY.

Dated: July 28, 2020.

Respectfully submitted,

Kenneth Collins (*Pro Se*)
Federal Register No. 75816-112
Federal Correctional Complex-Low
P.O. Box 9000
Seagoville, Tx 75159